0

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

ERIC SCOBY,

    Plaintiff,

    v.

CAROLYN COLVIN, Acting
Commissioner of Social Security,

    Defendant.

Case No. CV 13-4397-DFM

MEMORANDUM OPINION
AND ORDER

  Plaintiff Eric Scoby appeals from the denial of his applications for disability benefits. On appeal, the Court concludes that substantial evidence supported the finding of the Administrative Law Judge ("ALJ") that Plaintiff did not suffer from a severe mental impairment lasting for a continuous period of at least 12 months. Therefore, the ALJ's decision is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

  On August 4, 2008, Plaintiff filed applications for Social Security Disability Insurance and Supplemental Security Income benefits. Administrative Record ("AR") 205-16. He alleged disability beginning

November 1, 2007, because of a stab wound to his left temple, migraine headaches, poor memory, poor balance, nerve damage from a head injury, insomnia, left-head pain, left-side abdominal pain, blurred vision, and paranoia. AR 98-101, 235-39, 267-68, 278, 285, 287. He also submitted records of mental health treatment. See AR 293-316, 323-50.

After a hearing on September 14, 2010, an ALJ determined that Plaintiff had medically determinable impairments of mood disorder, depression, borderline intellectual functioning, posttraumatic stress disorder, history of diabetes mellitus, myopia, astigmatism, glaucoma, impacted cerumen, status post head trauma, headaches, and asthma. AR 20. The ALJ found, however, that none of these impairments was severe. AR 21. The ALJ thus found that Plaintiff was not disabled. AR 27.

## II.

## ISSUE PRESENTED

The parties dispute whether the ALJ erred in finding that Plaintiff did not suffer from any severe impairments. See Joint Stipulation ("JS") at 4. Plaintiff stipulates that, excepting issues raised in the Joint Stipulation, the ALJ has properly evaluated the medical evidence. Id. at 3.

## III.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th

1  Cir. 2007). It is more than a scintilla, but less than a preponderance.

2  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d

3  880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports

4  a finding, the reviewing court "must review the administrative record as a

5  whole, weighing both the evidence that supports and the evidence that detracts

6  from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720

7  (9th Cir. 1996). "If the evidence can reasonably support either affirming or

8  reversing," the reviewing court "may not substitute its judgment" for that of

9  the Commissioner. Id. at 720-721.

10  ## IV.

11  ## THE ALJ DID NOT ERR IN FINDING THAT PLAINTIFF

12  ## HAD NO SEVERE MENTAL IMPAIRMENTS

13  The ALJ's finding that Plaintiff's mental impairment symptoms would

14  impose no more than minimal limitations on his ability to perform basic work-

15  related activities was supported by substantial evidence.

16  **A.   Applicable Law**

17  At step two of the sequential evaluation process, the claimant has the

18  burden to show that he has one or more "severe" medically determinable

19  impairments that can be expected to result in death or last for a continuous

20  period of at least 12 months. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5

21  (1987) (noting claimant bears burden at step two); Celaya v. Halter, 332 F.3d

22  1177, 1180 (9th Cir. 2003) (same); 20 C.F.R. §§ 404.1508, 416.908 (defining

23  "physical or mental impairment"), 404.1520(a)(4)(ii), 416.920(a)(4)(ii)

24  (claimants will be found not disabled at step two if they "do not have a severe

25  medically determinable physical or mental impairment that meets the duration

26  requirement"). A medically determinable impairment must be established by

27  signs, symptoms, or laboratory findings; it cannot be established based solely

28  on a claimant's own statement of his symptoms. §§ 404.1508, 416.908; Ukolov

3

v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005); SSR 96–4p, 1996 WL 374187, at *1 (July 2, 1996). A "medical sign" is "an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical diagnostic techniques." Ukolov, 420 F.3d at 1005 (quoting SSR 96-4p, 1996 WL 374187, at *1 n.2 (July 2, 1996) (internal quotation marks omitted)); accord §§ 404.1528(b), 416.928(b).

   To establish that a medically determinable impairment is "severe," moreover, the claimant must show that it "significantly limits [his] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c); accord §§ 404.1521(a), 416.921(a). "An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (internal quotation marks omitted); see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."). Applying the applicable standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. Webb, 433 F.3d at 687.

**B.   Analysis**

   Although Plaintiff alleged both physical and mental impairments, he challenges only the ALJ's finding that he has no severe mental impairments. See JS at 6-9, 12-13. Plaintiff contends that his mental health records from the Department of Corrections and the report of consultant examining psychologist Dr. Brawer are sufficient to establish severe mental impairments. JS at 6-7. Plaintiff emphasizes that while incarcerated he was deemed to meet the inclusion criteria for the mental health treatment population, was assigned

4

1    Global Assessment Functioning ("GAF") scores of 45 and 50,[1] and was
2    diagnosed with mental impairments. Id.
3        As the ALJ noted, however, Plaintiff's prison records reflect that,
4    following an initial assessment of mental illness on the basis of a single
5    incident, Plaintiff's objective psychiatric signs rapidly stabilized within normal
6    limits. See AR 23-24. Most of Plaintiff's prison medical records date to April
7    29, 2008, when he cut or scratched his arm and reported that he did so because
8    an unidentified male voice told him to. See AR 294-303; 306-14; 330-34; 343-
9    50. The ALJ noted that although that event led to Plaintiff's mental health
10   screening and provisional diagnosis of psychotic disorder, Plaintiff denied
11   suicidal ideation, his risk level was deemed negligible, and his diagnosis was
12   downgraded from a GAF score of 45 to mood disorder the following day. AR
13   23. Thereafter, Plaintiff's mental signs were noted to be grossly normal, and he
14   complained of no psychiatric symptoms. See AR 299 (reporting Plaintiff
15   "stabilizing"); 326 ("this man has no signs of [mental illness]"); 341 (noting no
16   Axis I diagnosis and need to rule out mood disorder, not otherwise specified).
17   Plaintiff himself requested that he be discharged from psychiatric medications
18   in June 2008, having apparently already ceased taking them, and his clinician
19   reported him to be stable and "not psychotic" then and shortly thereafter. AR
20   23; see AR 323-25.[2]

21
22       [1] A GAF score of 41 to 50 indicates either "[s]erious symptoms" such as
23   "suicidal ideation, severe obsessional rituals, [or] frequent shoplifting," or a
     "serious impairment in social, occupational, or school functioning," such as a
24   lack of friends or inability to keep a job. See Diagnostic and Statistical Manual
     of Mental Disorders 34 (4th ed. 1994), available at:
25   https://www.msu.edu/course/sw/840/stocks/pack/axisv.pdf.

26       [2] To the extent Plaintiff contends (JS 7) that his mental-health issues
27   were caused by physical assaults, including one that required 50 stitches on
28   Plaintiff's head, the ALJ correctly noted that the record contains no evidence

5

The ALJ further noted that Plaintiff's records from the Department of Corrections reflect clinicians' concerns that Plaintiff was feigning reported symptoms. AR 23; see AR 335 (noting he was "obvious[ly] feigning . . . 'voices' [and] 'paranoia'"); 339 (noting he "endorsed every symptom that I asked him about including: do you see red & green spots"); 340 (noting Plaintiff's "ingenuine [sic] endorsement of every symptom). Indeed, evidence of Plaintiff's suspected malingering pervades the record. See AR 386, 394-95.

In particular, the ALJ noted that Plaintiff's apparent malingering significantly undermined the probative value of his examination by consultant clinical psychologist Dr. Brawer. AR 23. Dr. Brawer reported that Plaintiff's scores on the Weschler Adult Intelligence Scale and Weschler Memory Scale did not appear to be valid, citing "motivational factors." AR 388-89. Plaintiff's performance on the Test of Memory Malingering also produced scores "consistent with malingering," which was among Dr. Brawer's diagnoses. AR 389, 390.

It was thus entirely reasonable for the ALJ to question "whether claimant has been honest in reporting his psychiatric symptoms." AR 24. Such a determination would warrant a negative assessment of Plaintiff's credibility. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (noting that, in assessing credibility, ALJ may consider "claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid") (internal quotation marks omitted). It is the ALJ's responsibility to determine credibility and resolve conflicts or ambiguities in the evidence, and his assessment of Plaintiff's credibility and symptom severity is entitled to "great weight." See Magallanes v. Bowen, 881

---

of his treatment following these incidents, nor did any of the medical providers who examined Plaintiff note scarring consistent with such injuries. AR 23.

1   F.2d 747, 750 (9th Cir. 1989); <u>Weetman v. Sullivan</u>, 877 F.2d 20, 22 (9th Cir.
2   1989). Where, as here, the ALJ's credibility finding is supported by substantial
3   evidence in the record, the Court "may not engage in second-guessing."
4   <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002).[3]

5       Plaintiff nonetheless contends that, despite his apparently conceded
6   malingering (<u>see</u> JS at 7), Dr. Brawer's report is sufficient to establish
7   diagnoses of posttraumatic stress disorder, depressive disorder, and borderline
8   intellectual functioning. JS at 6. Plaintiff's malingering and Dr. Brawer's
9   concerns regarding the validity of the test scores were, however, themselves
10   reasonable bases upon which to discount the resultant diagnoses. <u>See</u> <u>Thomas</u>,
11   278 F.3d at 957 (noting ALJ need not accept physician's opinion if
12   unsupported by clinical findings); <u>Roberts v. Shalala</u>, 66 F.3d 179, 184 (9th
13   Cir. 1995) (upholding ALJ's rejection of examining psychologist's functional
14   assessment that conflicted with his own written report and test results); <u>see also</u>
15   <u>Soto v. Sec'y of Health & Human Servs.</u>, 795 F.2d 219, 222 (1st Cir. 1986)
16   (holding that ALJ is not obliged to accept IQ score "if there is a substantial
17   basis in the record for believing that [the] claimant was feigning the results");
18   <u>Gomez v. Astrue</u>, 695 F. Supp. 2d 1049, 1055-56 (C.D. Cal. 2010) (finding
19   ALJ properly rejected IQ scores where physician opined that they were invalid
20   because of Plaintiff's suboptimal effort or malingering).

21       Moreover, as the ALJ noted, Dr. Brawer's opinion was "inconsistent
22   with the longitudinal treatment record." AR 26; <u>see</u> 20 C.F.R.

---

23
24      [3] This evidence of malingering also relieved the ALJ of the burden of
25   providing clear and convincing reasons for discounting Plaintiff's credibility.
     <u>See</u> <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995); <u>Bagoyan Sulakhyan v.</u>
26   <u>Astrue</u>, 456 F. App'x 679, 682 (9th Cir. 2011). The ALJ nevertheless provided
27   clear and convincing reasons for not crediting Plaintiff's allegations regarding
     his symptoms.
28

§§ 404.1527(c)(4), 416.927(c)(4) (ALJ will generally give more weight to opinions that are "more consistent . . . with the record as a whole"). As noted above, Plaintiff's medical records from the Department of Corrections – the sole records submitted by Plaintiff in support of his claim of mental health impairment – reflect his stable psychiatric status and normal mental function. See AR 299, 323-26, 341. The indication that Plaintiff's impairments are mild is reinforced by the findings of neurologist Dr. Maze, who opined, based on her examination of Plaintiff, that his intellectual functioning was normal; his attention and concentration were not reduced; his memory functioning was "not impaired"; and he was able to comprehend and follow even complex instructions. AR 394-95. Thus, although the opinion of a medically acceptable source who has examined claimant is afforded more weight, 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1), substantial evidence supported the ALJ's assignment of "reduced probative weight" to Dr. Brawer's opinion. AR 26; see Hegel v. Astrue, 325 F. App'x 580, 581 (9th Cir. 2009) (finding substantial evidence supporting exclusion of examining physicians' opinions based on, inter alia, reports of malingering and invalid test results and ALJ's finding that claimant was not credible); Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir.1982) (noting it is ALJ's role to resolve conflicting medical reports and opinions).

Nor did the ALJ, as Plaintiff contends, substitute his own judgment for that of Dr. Brawer and the state agency physicians. JS at 8. The ALJ did not "reject" these opinions, but simply accorded them reduced weight. In the case of the state agency consultants, who opined that there was insufficient evidence of any mental disorders, the ALJ's grant of lesser weight to their opinions based on the evidence of mental disorders in the record was not only reasonable but accrued to Plaintiff's benefit. AR 26; see 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Moreover, even affording these opinions

reduced weight left the ALJ with substantial evidence upon which to base his decision, including Plaintiff's medical records, submissions, testimony, and the opinions of Drs. Maze and Boetcher. See AR 25; see Magallanes, 881 F.2d at 750 (noting it is ALJ's responsibility to determine credibility and resolve conflicts or ambiguities in the evidence).

Plaintiff further asserts that, if the ALJ found Dr. Brawer's findings ambiguous or inadequate, the ALJ should have requested additional testing and examination. JS at 8. The ALJ had no such duty. It was Plaintiff's burden to provide medical evidence demonstrating severe impairments. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir.2001); 42 U.S.C. § 423(d) (5)(A); 20 C.F.R. § 416.912(c). The ALJ's duty to augment an existing record is triggered "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes, 276 F.3d at 459. Here the ALJ reasonably found that the medical evidence demonstrated the existence of mild mental health impairments but nothing more.

Moreover, the ALJ's findings were amply supported by reports from Drs. Brawer and Maze, each of whom examined Plaintiff on behalf of the Commissioner. Plaintiff failed to appear for his initial consultative exam (AR 411), failed to put forth sufficient effort to establish valid psychological and intellectual test results (AR 388-89), demonstrated only mild deficiencies in reception, expression, and attention (AR 384, 387), and demonstrated no neurological deficiencies (see AR 394-95). Given his performance on the supplemental testing and examinations provided, there is no evidence that additional testing would have provided additional, reliable evidence.

Finally, to the extent that the ALJ credited Dr. Brawer's findings, Plaintiff's mental health records, and his statements, that evidence did not establish a severe mental impairment under the "paragraph B" criteria. See AR 26; 20 C.F.R. §§ 404.1520a, 416.920a. The ALJ noted Plaintiff's testimony

that he performs household chores, cares for his own needs, plays sports, and attends church in finding he suffered only mild limitation in activities of daily living and social functioning. AR 26. The ALJ relied on Dr. Brawer's assessment of only mildly diminished attention span in finding Plaintiff experiences only mild limitation in his ability to maintain concentration, persistence, and pace. Id. And the ALJ noted Plaintiff's April 29, 2008 self-harm incident, from which he appeared to recover beginning the next day, in finding that he had not suffered any periods of decompensation of extended duration. AR 26-27.

In sum, the ALJ's finding that the record lacks objective medical evidence to support the alleged severity of Plaintiff's mental impairments is supported by substantial evidence. Accordingly, the ALJ reasonably found that Plaintiff's medically determinable mental impairments were nonsevere. AR 27 (citing 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1)); see Bowen, 482 U.S. at 146 (noting that severity regulation requires showing of "impairment or combination of impairments which significantly limits" "the abilities and aptitudes necessary to do most jobs"); see Rua v. Astrue, ED CV 12-00591-SH, 2013 WL 1182964, at *2 (C.D. Cal. Mar. 21, 2013) (finding claimant failed to show severe mental health impairments where test results were invalid because of malingering, examiner diagnosed depression but not disabling illness, claimant was not being treated for mental health issues, and she engaged in normal daily activities).

///
///
///
///
///
///

10

# V.

## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated:  April 25, 2014

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

11